S. Franklyn Woodcock v. Commissioner.
S. Woodcock v. Commissioner
Docket No. 20606.
United States Tax Court
1950 Tax Ct. Memo LEXIS 60; 9 T.C.M. (CCH) 981; T.C.M. (RIA) 50260; October 31, 1950
Joshua W. Miles, Esq., 1607 First Nat. Bank Bldg., Baltimore 2, Md., and D. Sylvan Friedman, Esq., for the petitioner. Paul E. Waring, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion Respondent determined income tax deficiencies against petitioner for the calendar years 1944, 1945 and 1946, in the respective amounts of $833.54, $190.39 and $5,384.07. The questions presented by the pleadings are: (1) whether the profits from the sale of certain real estate sold by petitioner are taxable as ordinary income or as capital gain, and (2) whether the amount of $3,018.75 received by petitioner from the sale of three tracts of land in 1946 constitutes "commissions" and taxable as ordinary income or "profit" taxable as capital gain? Findings of Fact Petitioner is an individual residing and having *61 his place of business in Salisbury, Maryland. He filed his return for the periods involved with the collector of internal revenue at Baltimore, Maryland. Petitioner has been engaged in the real estate business in Salisbury during the past thirty-five years. As a real estate broker, he sold real property for others. Such properties are sold either on private listing contracts or at public auctions conducted by petitioner. On the private sales petitioner received 10% of the sales price as his commission, and on the sales at public auction he received 10% of the sales price, plus one-half of the amount obtained over the agreed selling price. Usually auction sales were extensively advertised by circulars and numerous "for sale" signs placed on the property. Private sales were, usually, advertised in newspapers. For over twenty years petitioner has acquired with other parties properties for the purpose of making profit from their resale. One of the parties was the Larmar Corporation, which dealt in real estate, promoted developments, and received substantial income from rentals. James Larmar and George F. Chandler, two officers of the corporation, are real estate men whose offices are *62 located in Salisbury about a block from petitioner's office. Petitioner acquired, held and sold more property with Larmar Corporation than with other individuals. Though they were competitors, Larmar and Chandler were good friends of petitioner. When Larmar Corporation became interested in purchasing real property, Larmar or Chandler would approach petitioner in order to get his judgment on its value. After inspecting and appraising the property, petitioner would be asked if he would agree to take an interest in the property, and he frequently took a half interest. The title to most of the properties purchased was taken in the name of Larmar Corporation, and most of the sales were made by the corporation, usually after one of the officers had conferred with petitioner about the price. There was no written agreement between petitioner and Larmar Corporation, but there was an understanding that their joint holdings would not be sold for a "shoestring profit." Petitioner's holdings with other associates were on a similar basis. Petitioner's sales of properties, including his joint holdings with associates, during the respective tax years, were as follows: 1944
Date
Pet'rs.
Property
Purchasers
Acquired
Interest
Gordy
Pet'r. & Larmer Corp.
Feb. 1941
1/2
Fairgrounds
Pet'r. & Larmar Corp.
Jan. 1943
1/2
Bay Heights
Pet'r. & J. E. Evans
July 1931
1/2
Standard Oil Co.
Pet'r. & Larmar Corp.
June 1943
1/3
Leonard Mill
Pet'r. & Larmar Corp.
Aug. 1943
1/2
Total
Morris
Pet'r. & Lloyd Chandler
1944
1/2
(1) Cost recovered in prior years.
(2) Reported as short-term net gain.
1945
Morris
Pet'r. & Chandler
May 1944
1/2
Collins
Pet'r. & Chandler
Sept. 1944
1/2
Long
Pet'r. & Curtis W. Long
1932
1/2
Synepuxent Farm
Pet'r. & Louise Parsons
1941
2/3
States Roads Commission
Pet'r. & Larmar Corp.
1942
1/2
Total
(1) Cost recovered in prior years.
(2) No cost allocated.
1946
Showell
Pet'r. & Larmar Corp.
July 1945
1/3
Hodgson
Pet'r. & Herman Hodgson
1931
1/2
Horsey
Pet'r. & Larmar Corp.
May 1943
1/2
Bay Heights
Pet'r. & J. E. Evans
July 1931
1/2
Dickerson Timber
Pet'r. & Larmar Corp.
Oct. 1943
1/2
Synepuxent Farm
Pet'r.
Nov. 1941
All
Salisbury Realty Co.
Pet'r. & Larmar Corp.
Jan. 1940
1/2
Sunny Side lots
Pet'r. & H. C. Mezick
1935
1/2
Long Timber
Pet'r. & Guy E. Long
1935
1/2
Wooten Corp.
Pet'r. & Larmar Corp.
May 1945
1/2
Collins Land
Pet'r.
Sept. 1945
All
Maple Plains lots
Pet'r. & Larmar Corp.
Jan. 1940
1/2
Leonard Farm
Pet'r. & Larmar Corp.
Oct. 1941
1/2
Richwill Park
Pet'r. & Larmar Corp.
July 1945
1/2
Total
(1), (2), (3), (4), (5), (6), (7) and (8). Cost recovered in prior years.
(9) and (10). Sales price not shown. Petitioner received check from Larmar Corporation for his interest.
*63 1944
Date
Sales
Pet'rs.
Property
Cost
Sold
Price
Profit
Gordy
$9,140.42
Oct. 1944
$13,790.00
$2,324.79
Fairgrounds
3,000.00
Apr. 1944
3,700.00
350.00
Bay Heights
(1)
July 1944
1,000.00
500.00
Pet. Int.
Pet. Int.
Standard Oil Co.
865.00
Dec. 1944
2,840.68
1,974.88
Leonard Mill
1,200.00
Dec. 1944
2,500.00
650.00
Total
$5,799.67
Pet. Int.
Morris
562.50
1944
800.00
$ 237.50
(2)
(1) Cost recovered in prior years.
(2) Reported as short-term net gain.
1945
Pet. Int.
Pet. Int.
Morris
$ 455.00
Oct. 1945
$ 811.67
$ 356.37
Collins
1,135.28
Nov. 1945
1,405.00
269.72
Long
(1)
Mar. 1945
510.00
255.00
Pt. of Farm
Synepuxent Farm
3,302.84
June 1945
6,000.00
1,798.11
Pet. Int.
States Roads Commission
(2)
1945
135.50
135.50
Total
$2,814.70
(1) Cost recovered in prior years.
(2) No cost allocated.
1946
Showell
$3,600.00
June 1946
$ 5,000.00
$ 466.67
Pet. Int.
Hodgson
(1)
April 1946
422.50
422.50
Horsey
Pet. Int.
(2)
June 1946
210.00
210.00
Bay Heights
(3)
Jan. 1946
10,000.00
5,000.00
Dickerson Timber
(4)
Sept. 1946
11,000.00
8,318.47
Synepuxent Farm
1,676.56
Sept. 1946
2,000.00
323.44
Pet. Int.
Salisbury Realty
Co.
100.00
Sept. 1946
1,696.25
Dec. 1946
1,000.00
2,596.25
Pet. Int.
Sunny Side lots
(5)
Jan. 1946
33.00
33.00
Pet. Int.
Long Timber
(6)
Jan. 1946
125.00
125.00
Pet. Int.
Wooten Corp.
20,000.00
1946
12,500.00
2,500.00
Pet. Int.
Collins Land
3,500.00
Mar. 1946
4,000.00
383.75
Maple Plains lots
(7)
Jan. 1946
(9)
734.36
Leonard Farm
(8)
Jan. 1946
(10)
290.00
Pet. Int.
Pet. Int.
Richwill Park
826.00
Feb. 1946
3,656.00
2,830.00
Total
$24,233.44
(1), (2), (3), (4), (5), (6), (7) and (8). cost recovered in prior years.
(9) and (10). Sales price not shown. Petitioner received check from Larmar Corporation for his interest.
*64 Petitioner and respondent are in agreement that petitioner's profits during the tax years 1944, 1945 and 1946 were, respectively, $5,799.67, $2,814.70, and $24,233.14, and that such amounts were, respectively, reported by petitioner as long-term capital gains. The properties were, respectively, acquired and disposed of under the following circumstances: 1944 Ida Ward Gordy Property. This property was purchased at the cost of $9,140.42 from Ida Ward Gordy in 1941. It was a small farm and was located on Fitzwater Street extended, which is a wide street west of Salisbury. It was purchased for the purpose of reselling for profit after it had appreciated in value, and at the time of purchase there was the prospect of the railroad company running a siding to this property. Later the construction of the siding was started and was in progress at the date of hearing. This property was held until 1944. In the meantime H. B. Roberts acquired adjoining property on which he operated the Salisbury Shipyard, and he desired additional space. Arthur Eypel owned property adjoining the shipyard, and he wanted a portion of the Gordy property so as to protect himself from the shipyard and to *65 straighten out his property line. A part of the property was sold to Eypel, and the remainder to the Roberts' interests. This property was not advertised for sale as the interested individuals approached Larmar Corporation, and petitioner agreed to sell for $13,790 and the profit he received was $2,324.79. Fairground Property. This piece of property was a residue of the old County Fairgrounds, and was located on Fitzwater Street extended. It is not shown how much ground was acquired. Other Fairground property was used for manufacturing purposes. This parcel of real estate was purchased at an auction sale in January, 1943, at the cost of $3,000 for the purpose of selling for profit after it had appreciated in value. It was sold by Larmar Corporation the next year after its purchase for $3,700 and netted petitioner a profit of $350. Bay Heights Development Company Property. This property was acquired in 1931 by petitioner and J. Edward Evans of Pittsville, Maryland, who had suggested that petitioner and he buy the property. It was located on Ocean City, Maryland, and belonged to the Pennsylvania Railroad Company. The property was marsh land and was acquired for the purpose *66 of developing it. Petitioner and Evans built three houses and attempted to make a fill, but that being expensive and the depression having set it, they could not complete the development. They sold each of the houses at a loss. In 1933 a storm cut an inlet just south of Ocean City and the Government dredged the channel. As the property was located on this body of water, petitioner and Evans gave the Government a 150-foot right-of-way in return for the filling of their property. They had advertised the property for sale, but were able to sell only a few lots for $300 apiece. Since then, they have sold lots for as high as $2,500. The property had been subdivided by a subsidiary of the railroad company many years before petitioner and Evans acquired it. They still have some unsold lots. Between the years 1931 and 1944 petitioner and Evans had recovered their cost of the property, which is not shown. Standard Oil Property. This property was located on Camden Street in Salisbury on what was then Route No. 13. Standard Oil Company had paid approximately $15,000 for the property, and had operated a filling station thereon. Route No. 13 was rerouted and, with the traffic being diverted, *67 the value of the property decreased. The company sold it to petitioner, Larmar Corporation, and Demmead Kolb. Petitioner's cost for one-third interest amounted to $865.80. The parties had planned to make a parking lot and had improved the back of the property for that purpose. During 1944 Kolb advised the other parties that the property was wanted for a Jewish synagogue. However, Victor Lynn, who owned adjoining property, had wanted at least a part of it and was promised a refusal to buy before the property would be sold. A small lot in the back was sold to Lynn as he wished to straighten the line of his adjacent property, and the balance was sold to the Jewish synagogue. When this property was purchased, the parties thought it was a good buy at the price but intended to use it as a parking lot. Leonard Mills Property. This property was located on the Del Mar Highway. It appeared to be good property for development. Parcels of the property were sold to various people from time to time, although no "For Sale" sign was placed on the property. The property had been subdivided into lots and sold at auction. Petitioner and Larmar Corporation bought the residue of the unsold lots looking *68 forward to development and the enhancement in value of the property. This sale was made in December 1944, a little over a year after the lots were bought. It is not shown how many lots were purchased or the number still owned by petitioner and Larmar Corporation. Morris Property. This property was purchased by petitioner and Lloyd Chandler at an auction of an estate. It was located between Parsonsburg and Pittsville, Maryland, one of the largest strawberry markets in the country. Chandler sold the property and petitioner was willing. As this property was purchased and sold in 1944, petitioner reported his profit of $237.50 as short-term gain. 1945 Morris Property. Petitioner and Lloyd Chandler acquired this property in May 1944. It was a farm situated near Mardela, Maryland. As it had a stone road frontage, petitioner considered it to be good property and his money safe in it. Chandler sold the property and petitioner was willing to sell for his profit of $356.37. The sale took place in October 1945. Petitioner's interest cost $455 and was sold for $811.67. Collins Property. This property was acquired at an auction sale by petitioner and Lloyd Chandler in September *69 1944, and sold in November 1945. It was a farm with growing timber, and was located near Hallwood, Virginia, just across the Maryland line. Chandler sold the property and petitioner was willing to sell for his profit of $269.72. Petitioner's interest cost $1,135 and was sold for $1,405. Curtis W. Long Property. Petitioner and Curtis W. Long had acquired and sold property together for over 20 years. This sale was of a lot located on East Church Street in Salisbury, which had been held by petitioner and Long since 1932. Long sold the property in 1945, and brought petitioner his profit of $255. Long kept the books on the joint holdings, and he and petitioner had recovered the cost of the lot from previous sales of other properties, the cost of which is not shown. Petitioner did not know what cost Long carried on the property and was willing that it be sold at a profit. Synepuxent Property. This property was a farm of approximately 579 acres, with 150 acres in woodland, located on the Synepuxent Bay, about six miles south of Ocean City, Maryland. Petitioner and his secretary, Louise Parsons, purchased the farm in 1941, with petitioner obtaining two-thirds interest and his secretary *70 one-third interest. They first rented it to Dulaney Frozen Foods, but now they operate it themselves with the assistance of two tenants. In 1945 petitioner was approached by two prospective purchasers who wanted plots for home sites. Ten-acre plots were sold to each. In 1946 another plot of ten acres was sold as a home site to a third purchaser. Two fine homes have been erected and the other purchaser is going to build another. Petitioner felt it would not hurt the rest of the farm to sell thirty acres, and the sale would help his secretary to pay on what she owed for her portion. The cost of the farm to petitioner and Parsons is not shown, but the cost of the property sold in 1945 at $6,000 is stipulated to be $3,302.84, giving petitioner a profit of $1,798.11, two-thirds of $2,697.16. The cost of the plot sold in 1946 for $2,000 is stipulated to be $1,676.56. States Roads Commission Property. Petitioner and Larmar Corporation, in 1942, acquired two adjoining pieces of property just north of Salisbury on Route No. 13. One of the pieces of property has a filling station on it. The state wanted to straighten a curve of the highway. Petitioner and Larmar Corporation sold the state *71 a small strip of land from both pieces of property at the price the state was willing to pay. The sale prevented possible condemnation proceedings. The cost of the two pieces is not shown, and no allocation of cost was placed on the property sold, as the joint holders considered the improvement of the road enhanced the value of the remainder of the property. They treated the amount received as profit. Showell Property. This property was located between Salisbury and Berlin. It had been in the Showell family for many years. In 1945 they had to dispose of it. At the request of James Larmar and George P. Chandler of the Larmar Corporation, petitioner went with them to look over the property. The buildings were in a dilapidated condition but the property was thickly set in growing timber. Petitioner and Larmar Corporation bought it in July 1945, petitioner acquiring one-third interest. Larmar was a breeder of registered beagle hounds and president of a beagle club. He was not satisfied with the running grounds the club had and suggested that the Showell property be sold to the club. Although the property was bought because of the value of timber and petitioner preferred to hold it, *72 he agreed to the sale to the club for $5,000, petitioner's profit being $466.67. Hodgson Property. The sales from this property were determined by respondent to be "Commissions." Petitioner and Herman Hodgson owned a number of lots together. They acquired this particular lot in 1931 and sold it in 1946. Hodgson made the sale and brought petitioner his profit of $422.50. Hodgson kept books on their joint holdings. This particular property was a leftover lot in the Pinehurst Development for which petitioner and Hodgson traded. As their cost of the property traded had been recovered from previous sales, no cost was allocated to this lot. Horsey Land. One Horsey of Laurel, Delaware, formerly owned the property from which this sale was made. The property was located about two miles from Del Mar and had frontage on Route 13. As long as Horsey lived, the property was not for sale. After his death, petitioner and Larmar Corporation bought it from the heirs in 1943. They subdivided the property into lots and sold all that could be sold. The lot sold in 1946 was a leftover from the subdivision, and no cost was allocated to it, as the co-owners had recovered their cost in the earlier *73 sales. Petitioner's profit was $210. Bay Heights Development Co. Property This particular sale was made from the same property acquired in 1931 by petitioner and J. E. Evans, described in the list of sales for the year 1944. As the joint holders had recovered their cost from sales made between 1931 and 1944, no cost was allocated to these lots. The sales price of $10,000 represents the sale of four separate lots, and petitioner's profit therefrom amounted to $5,000. Dickerson Timber Land. This property of between 400 and 500 acres was part of the U. R. Dickerson Estate, and was acquired by petitioner and Larmar Corporation in October, 1943. It was located in the southeast section of the county from Salisbury and consisted of farm land, scrub woodland, and merchantable timber. A lot of the property fronted on a hard-surfaced road, but the timber was further out on a county road. In 1944 Larmar thought it was a good time to sell some of the property, and while petitioner preferred to hold because the timber property was growing, he agreed to sell. They advertised a public auction and put up the farm part for sale in acreage units along with some lots on another small piece *74 of the property. One purchaser bought all the farm units at the sale. The scrub woodland was subdivided into lots but they were not offered for sale at this auction. They were later offered for sale, but not all have been sold. In 1946 the timberland was sold and also a lot. No cost was allocated to these particular sales made in 1946 as the cost of the property had been recovered from the earlier sales. Larmar Corporation, which kept the records, gave to petitioner his profit of $8,318.47. Synepuxent Property. This is another sale from the farm acquired by petitioner and his secretary and described in the list of sales for 1945. It does not appear she had any interest in this sale, for the profit of $323.44 was petitioner's. Salisbury Realty Co. and Laurel Land Property. Respondent determined that the amounts received by petitioner from these two sales were "commissions." The Salisbury Realty Company had originally promoted a development in which these particular lots were situated. Prior to 1940 Larmar Corporation purchased the unsold residue of the development and engaged petitioner to sell the property at public auction. The sale was thoroughly advertised but some lots *75 located on Meadow Street in Salisbury would not sell. Larmar Corporation offered to take $200 apiece for these remaining lots. Petitioner purchased a half interest in the lots in 1940. They were in a commercial zone and appreciated in value. While these lots were not advertised for sale after petitioner had acquired his interest in them, some sales were made from time to time and on each sale his cost was shown at $100. Petitioner's profits from the sale in 1946 amounted to $2,596.25. The joint holders still own 10 or 15 of the lots. Sunny Side lots. Petitioner and H. C. Mezick, of Fruitland, Maryland, acquired these lots about 1935 in Mezick's name. They were located in a colored section and as Mezick sold the lots he would deliver petitioner's profits to him. Petitioner was willing for Mezick to sell the property as he was perfectly reliable. This sale in 1946 was a small transaction, and there was no cost charged against petitioner's profit of $33. Long Timber property. Petitioner and Guy E. Long bought a farm in 1935. It was situated on two sides of the road. They early sold the larger part on which the house was located, but could not sell the smaller part, which at *76 that time was cut-over land and was not of much value. In 1946 Long went to petitioner and stated that he could sell the property for $250, which petitioner was glad to get. As cost had been recovered from the previous sale, no cost was charged against petitioner's profit of $125. Wootten Corporation property. Petitioner and Larmar Corporation acquired this property in May 1945, at the cost of $20,000. It was a brick building on East Main Street in the business section of Salisbury. It was purchased for rental. At the end of the year Larmar and Chandler (Larmar Corporation) expressed the desire to own it all, as they owned the adjoining property on which they intended to build. They wanted to control and use the wall of the brick building. Petitioner sold his half interest in the property to Larmar Corporation for a profit of $2,500. Collins Land. Petitioner did not recall how he acquired this property in September, 1945, at the price of $3,600. Nettie Chandler purchased it in March 1946, at the price of $4,000, but petitioner thought he was solicited by her husband to sell. After deducting expense for attorney's fees for preparing papers, petitioner realized the profit of *77 $383.75. Maple Plains lots. In 1940 petitioner and Larmar Corporation bought the residue of a subdivision in which there remained a number of lots. The lots were sold from time to time when profit was available. They were located north of Salisbury, about one-half mile from the city limits. In 1946 Larmar Corporation made this particular sale, and sent petitioner its check in the amount of $734.36 as his profit. They still have some unsold lots in this subdivision. Leonard Farm property. In 1941 petitioner and Larmar Corporation acquired the remainder of this subdivided property. The lot sold in 1946 by Larmar Corporation was one of the leftover lots. Larmar Corporation sent petitioner its check $290for as his profit from the sale. Petitioner and Larmar Corporation still own a considerable part of this property. Richwill Park property. Petitioner and Larmar Corporation acquired the residue of this subdivided property in July 1945. The property was located on Snow Hill Road, and adjoins a golf course. It cost about $6 per front foot, and the lots were 50 and 60-foot fronts. This particular sale in 1946 shows petitioner's interest sold at $3,656, against which $826 was *78 charged as his cost, netting him a profit of $2,830. This represents a sale of 2 or 3 lots. The parties still have some of the lots for sale. At the date of hearing petitioner still had substantial joint holdings with Larmar Corporation, some of which are as follows: Date
Pet'rs.
Property
Acquired
Cost
Interest
Salisbury Realty Co. lots
Jan. 1940
$ *
1/2
Maple Plains lots
Jan. 1940
*
1/2
Leonard Farm subdivision
Sept. 1941
5,500.00
1/3
Synepuxent Worcester County
Nov. 1941
34,340.00
1/2
Property from which piece was
sold to States Roads Com.
1942
*
1/2
Nutters District
Jan. 1943
1,100.00
1/2
Horsey land
May 1943
*
1/2
Dickerson Property
Oct. 1943
26,500.00
1/2
Tony Tank Dev. Co. 26 acres
Oct. 1943
7,969.00
1/2
Townsend Farm
May 1944
23,000.00
1/2
F. Frank Goslee
July 1944
2,250.00
1/2
Mollie D. Merritt
July 1944
2,750.00
1/2
Camden Ave. lots 2 and 3
Oct. 1944
2,017.95
1/2
Elzey-Parsons Murrell lots
Mar. 1945
1,250.00
1/2
Harry Calloway
Apr. 1945
5,785.00
1/2
J. H. Perdue lot
May 1945
600.00
1/2
J. H. Perdue land 20 lots
May 1945
5,000.00
1/2
J.S.T. Wilcox
May 1945
4,000.00
1/3
Richwill Park
July 1945
*
1/2
Oaks Dev. Co.
Aug. 1945
3,500.00
1/2
Sherman Townsend lot
Aug. 1945
6,025.00
1/2
Sadie Toadvine
Sept. 1945
10,000.00
1/2
Geo. E. Richardson
Feb. 1946
3,950.00
1/2
Harlan West
Apr. 1946
4,000.00
1/2
Gordy Culber
Sept. 1946
500.00
1/2
Allen land, 3 lots
Aug. 1946
15,235.00
1/2 sold 65 feet
4 lots
21,750
1/2 $3,250
*79 There is no complete list of properties still held jointly by petitioner with other individuals, but from the sales shown during the tax years herein the holdings listed below are known: Year
Pet'rs.
Property
Associated
Acquired
Interest
Hodgson
Herman Hodgson
1931
1/2
Bay Heights Dev. Co.
J. E. Evans
1931
1/2
Long
Curtis W. Long
1932
1/2
Sunny Side lots
H. C. Mezick
1935
1/2
Long Timber
Guy E. Long
1935
1/2
Synepuxent Farm
Louise Parsons
1941
2/3
There is no complete list of petitioner's joint holdings acquired and disposed of prior to 1944, but it is known that the following properties were some of such holdings: Year
Pet'rs.
Property
Associate
Acquired
Cost
Year Sold
Price
Interest
Caleb
Curtis W. Long
1937 & 1938
$1,776.26
1939
*
1/2
Salisbury
Realty Co.
Larmar Corp.
Jan. 1940
*
May 1941
$3,600.00
1/2
Aug. 1942
1,000.00
1/2
Aug. 1942
350.00
1/2
Aug. 1942
525.00
1/2
Aug. 1942
1,362.00
1/2
Penn. R.R.
Co.
Larmar Corp.
Oct. 1940
15,750.00
June 1941
27,200.00
1/3
Part
Leonard
Farm
Larmar Corp.
Sept. 1941
5,500.00
Sept. 1943
6,673.00
1/3
Horsey
Larmar Corp.
May 1943
6,200.00
Nov. 1943
14,596.63
1/2
1943
lot
600
1/2
1943
lot
800
1/2
Nunvar
Farm
Larmar Corp.
Oct. 1943
3,500.00
Nov. 1943
5,700.00
1/2
*80 Petitioner reported in his income tax returns for the years 1942-1946, inclusive, the following incomes from his real estate business, farm and sales of capital assets: 1942
1943
1944
1945
1946
Real Estate and Rental
Business
Gross income
$17,080.50
$27,009.82
$39,884.38
$31,645.51
$38,675.12
Expense
9,349.40
11,692.95
19,408.75
22,203.30
32,728.24
Net income
$ 7,731.10
$15,316.87
$20,475.63
$ 9,442.21
$ 5,946.88
Farm
Gross income
1,173.00
2,001.17
2,211.52
8,270.66
none
Expenses
10,097.64
15,674.18
21,309.08
11,985.06
none
Loss
$ 8,924.64
$13,673.01
$19,097.56
$ 3,714.40
Capital Gains
Long Term
none
none
5,799.67
2,815.00
24,233.44
Short Term
none
none
237.50
none
none
The reports do not show petitioner's "commission" from real estate sales, as they were included with "rentals," and petitioner was unable to give such amounts at the hearing. Petitioner was in the business of buying and selling real estate and the properties, including his joint holdings, sold during the tax years 1944, 1945 and 1946, had been respectively held by him primarily for sale to customers *81 in the ordinary course of his business, with the exception of the properties identified in our findings as the Standard Oil property, the Synepuxent property, and the Wootten Corporation property. Opinion KERN, Judge: The proof shows that petitioner owned a half interest in the Hodgson property with Herman Hodgson, and the Salisbury Realty Company lots with Larmar Corporation, which removes the question of whether the profits from the sales of such properties were "commissions" as determined by respondent. The only question that remains is whether the profits realized from the sales of real estate, including the Hodgson and the Salisbury Realty Company properties, during the tax years involved, are taxable as ordinary income or as capital gain under section 117 of the Code. [1]
*82 We have carefully considered the arguments of both parties in the light of the record before us, together with the authorities cited in their briefs, and have concluded that petitioner, during the taxable years, was engaged in the business of buying and selling real estate, and that the real estate sold by or for him during the taxable years, with the three exceptions noted in our findings of fact, constituted property held by him primarily for sale to customers in the ordinary course of such business. See et seq. Decision will be entered under Rule 50. Footnotes
*. Not shown in the record.↩
*. Not shown in the record.↩
1. Section 117 (a) (1) defines capital assets as follows: The term "capital assets" means property held by the taxpayer (whether or not connected with his trade or business) but does not include * * * property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business * * *. Subsection (a) (4) states that: The term "long-term capital gain" means gain from the sale or exchange of a capital asset held for more than six months, if and to the extent such gain is taken into account in computing net income. Subsection (b) provides that: The percentage of the capital gain to be taken into account in computing net income shall be "50 per centum if the capital asset has been held for more than six months."↩